Stephen Warren
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799
*Attorney for Movant Sidley Austin LLP*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIDLEY AUSTIN LLP,

                Movant,

v.

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

                Subpoena Recipient.

Civil Action No. _____

## SIDLEY AUSTIN LLP'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL WOLF HALDENSTEIN TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

Pursuant to Federal Rules of Civil Procedure 26 and 45, Sidley Austin LLP ("Sidley") moves for an order compelling Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") to produce documents responsive to Sidley's Subpoena dated August 21, 2018 (the "Subpoena").[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This motion to compel arises out of a putative class action filed in October 2016 by Frederick Siegmund in the Southern District of Florida. Siegmund, who had invested in a company with operations in China, alleges that the company's owners conspired to deprive Siegmund and

---

[1] The Subpoena is attached as <u>Exhibit J</u> to the accompanying Declaration of Stephen Warren, Esq. dated Nov. 19, 2018 ("Warren Decl."). The Objections to the Subpoena are attached as <u>Exhibit L</u>. If this Motion to Compel is transferred to the Southern District of Florida for adjudication, it is also brought pursuant to S.D. Fla. Local Rule 26.1(e)(2)(B)(ii) and the General Order on Discovery Objections and Procedures entered in the underlying case pending in the Southern District of Florida (DE No. 168).

other shareholders of the fair value of their shares in a cash-out merger.  Siegmund further alleges that Sidley, an international law firm, knowingly assisted the company's owners in their scheme by serving as corporate counsel in the merger.  Siegmund is represented in that lawsuit by the law firm of Wolf Haldenstein.[2]  (Warren Decl. ¶¶ 3-6.)

Siegmund alleges in his complaint that certain financial information filed with the Shanghai Administration of Industry and Commerce (the "SAIC") demonstrates that Linkwell's Chinese operating subsidiary (Likang Disinfectant) had substantial net assets and net profits in the years 2012-14.  *Id.* ¶ 8.  The purpose of making this allegation is to support Siegmund's claim that the consideration paid to the shareholders in the cash-out merger was inadequate.  *Id.* ¶ 9.  However, when Sidley served document requests on Siegmund, he did not produce any documents from the SAIC.  *Id.* ¶ 10.

More recently, Siegmund's damages expert, Joseph Thompson, served an expert report setting forth his opinions.  As required by the Federal Rules, Thompson's report identified the materials he considered in rendering his opinions.  *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring experts to identify "facts or data considered").  Thompson disclosed that, among other things, he had relied on records from the SAIC.  (Warren Decl. ¶ 11 & Exh. B.)  Upon seeing this, Sidley immediately sent a letter to Wolf Haldenstein demanding that it produce copies of all documents Thompson considered, including the SAIC records.  *Id.* ¶ 12 & Exh. C.  Wolf Haldenstein responded by producing a heavily-redacted report titled "Report on Investigation into Shanghai Likang Disinfectant High Tech Co. Ltd." dated November 12, 2015 (the "Shanghai Likang Report").  *Id.* ¶ 13 & Exh. D.  The Shanghai Likang Report was addressed to Wolf Haldenstein

---

[2] Prior to the class action, Siegmund filed a shareholder derivative action against the company's owners and others alleging other malfeasance, but that proceeding was dismissed for lack of standing after the cash-out merger was consummated.  Wolf Haldenstein also represented Siegmund in the derivative action.  (Warren Decl. ¶¶ 2-5.)

and had a "Privileged and Confidential" stamp on its cover.  *Id.*  In one of the few excerpts in the report that were not redacted there was a chart containing the same SAIC financial information that appeared in Siegmund's complaint and Thompson's report, but there were no actual SAIC records.  *Id.* at Exh. D.

Sidley notified Wolf Haldenstein that if it shared an unredacted copy of the Shanghai Likang Report with Thompson, it was required to turn over an unredacted copy to Sidley because any work product privilege had been waived.  *Id.* ¶ 14 & Exh. E.  In response, Wolf Haldenstein suggested that Sidley serve a subpoena on Thompson, which Sidley did.  Thompson then produced an unredacted copy of the Shanghai Likang Report.  *Id.* ¶¶ 16-17 & Exh. H.[3]  The unredacted version showed that it had been prepared by FTI Consulting, a global firm that provides litigation consulting among other services, and that FTI had been engaged by Wolf Haldenstein to investigate various entities and persons in China and prepare the report.  *Id.* ¶ 17.

## THE SUBPOENA

In August 2018, Sidley served on Wolf Haldenstein the Subpoena that is the subject of this Motion.  *Id.* ¶ 19 & Exh. J.  The Subpoena seeks the following four categories of documents related to the Shanghai Likang Report: (1) the engagement letter with FTI Consulting; (2) all drafts of the Shanghai Likang Report; (3) documents FTI Consulting collected, prepared, received or used in connection with its engagement; and (4) communications between Wolf Haldenstein and FTI Consulting.  *Id.* at Exh. J.  Wolf Haldenstein has advised that it has no other drafts of the report and, therefore, Request No. 2 is not at issue.  *Id.* at Exh. L.  As to the remaining requests, however, Wolf Haldenstein has asserted the same set of objections, namely and most prominently, that: (i) serving a subpoena on counsel is "patently improper;" and (ii) the Shanghai Likang Report was

---

[3] Because Plaintiff asserts that the unredacted Shanghai Likang Report is confidential, a copy will be filed under seal.

commissioned in connection with the earlier derivative action and therefore any materials sought by the Subpoena are protected work product.  *Id.* at Exh. L.  Based on these objections, Wolf Haldenstein has refused to produce a single responsive document.  *Id.* ¶ 20.  In addition, Wolf Haldenstein has refused to produce a privilege log, relying on a local rule in the Southern District of Florida that states parties need not prepare a privilege log for work product materials created "after commencement of the action."  *See* S.D. Fla. L.R. 26.1(e)(2)(C).

## ARGUMENT

Wolf Haldenstein's objections lack merit.  First, there is nothing patently improper about serving a subpoena on a law firm, particularly where, as here, the law firm retained a consultant. Second, any work product protection as to the Shanghai Likang Report and any related documents was waived when Siegmund (and Wolf Haldenstein) chose to share the report with Thompson. Third, any right to assert work product protection has been waived because Wolf Haldenstein failed to produce a privilege log.  Accordingly, Wolf Haldenstein's objections should be overruled and it should be compelled to produce the requested discovery.

## I.     SIDLEY IS PERMITTED TO SERVE A SUBPOENA ON WOLF HALDENSTEIN.

Contrary to Wolf Haldenstein's claim, there is nothing "patently improper" about seeking discovery from a law firm.  *See, e.g., Drummond Co. v. Collingsworth*, 816 F.3d 1319 (11th Cir. 2016) (denying petition filed by attorney and his law firm to quash subpoenas); *St. Johns Ins. Co. v. Nautilus Ins. Co.*, No. 807-CV-2312-T-30MAP, 2008 WL 1897572, at *2 (M.D. Fla. Apr. 28, 2008) (denying motion to quash subpoena served on plaintiff's counsel).  Wolf Haldenstein contends the Subpoena "serves only to harass Plaintiff's counsel," but that too is baseless.  The Subpoena is narrowly drawn and does not seek any client-related information or communications. Rather, the Subpoena is limited to documents related to the engagement of FTI Consulting, which

predated the commencement of the class action.  Moreover, it was Wolf Haldenstein who retained

FTI Consulting, which made it necessary to serve the Subpoena on Wolf Haldenstein.

## II.    WORK PRODUCT PROTECTION HAS BEEN WAIVED.

### A.    Sharing the Shanghai Likang Report with the Testifying Expert Resulted in a Subject Matter Waiver over the Report and Any Related Materials.

It is undisputed that Siegmund and Wolf Haldenstein shared an unredacted copy of the

Shanghai Likang Report with Thompson.  In doing so, they waived any work product protection

over the report.  *See RTG Furniture Corp. v. Indus. Risk Insurers*, 07-80538-CIV, 2008 WL

11331986, at *5 (S.D. Fla. May 15, 2008) (finding that plaintiff waived work product privilege

over materials provided to testifying expert); *In re Methyl Tertiary Butyl Ether (MTBE) Prod.

Liab. Litig.*, 293 F.R.D. 568, 577 (S.D.N.Y. 2013) ("[T]he policy considerations justifying the

protections afforded to consulting experts do not apply when the consulting expert furnishes facts

to a testifying expert who considers them in forming an opinion to be offered at trial . . .").

The waiver is not, however, limited to the final Shanghai Likang Report.  There was a

subject matter waiver of all information contained in the report and all related documents.  The

case of *L-3 Communications Corp. v. Sparton Corp.* is highly instructive.  There, as here, the

plaintiff turned over to the defendant a report prepared by its consulting expert.  When defendant

served a subpoena seeking additional documents relating to the consulting expert's engagement,

the plaintiff moved to quash and asserted work product protection.  The court held that the work

product privilege was waived "to the extent of the information covered in those reports." *See* No.

6:13-CV-1481-ORL-TBS, 2014 WL 2882925, at *3 (M.D. Fla. June 25, 2014) (emphasis added).

Importantly, the *L-3* court observed that "[i]n order for Defendants to understand, challenge, and

otherwise make use of the reports given to them by Plaintiff, they will need to know the

communications between [the consulting expert] and others, what investigations and tests it

performed, the results of those investigations and tests, the information it obtained, and any other information it developed, which underlies the reports given to Defendants." *See id.*

Similarly, in *Gardner v. Ford Motor Co.*, the court held that a consulting expert's investigative notes containing facts and opinions disclosed to and discussed with a testifying expert were not protected work product, where the testifying expert based his determination "at least in part, on 'the information that [the consulting expert provided]. . .'" *See* No. 6:14-cv-508-Orl-18DAB, 2015 WL 12841011, at *1 (M.D. Fla., June 3, 2015). Significantly, the *Gardner* court determined that under such circumstances, "any privilege is waived by the requirements of Rule 26(a)(2)(B), compelling the disclosure of the 'facts or data considered by the witness' in forming his expert opinion." *See id.*; *see also* Rule 502 ("When the disclosure is made in a federal proceeding . . . and waives the . . . work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.") (emphasis added).

Wolf Haldenstein wants to have its cake and eat it too by seeking the benefit of the work product protections afforded to a consulting expert's materials and communications, while at the time sharing with its testifying expert the consulting expert's final report (so that the testifying expert can rely on the report in providing an opinion on damages). In fairness to Sidley, Wolf Haldenstein should be compelled to produce all responsive documents so that Sidley can "understand, challenge, and otherwise make use of" the Shanghai Likang Report. *See L-3 Commc'ns Corp.*, 2014 WL 2882925, at *3. To do that, Sidley needs to know how the engagement was structured, what documents FTI Consulting received, prepared or used, and what communications FTI Consulting had during its engagement. Those are precisely the materials sought by the Subpoena.

**B.    Wolf Haldenstein Waived Work Product Protection by Failing to Produce a Privilege Log.**

Wolf Haldenstein, citing S.D. Fla. Local Rule 26.1(e)(2)(C), asserts that it is not required to produce a privilege log for work product material created after commencement of the action, including materials created in the earlier derivative action.  The local rule does not, however, apply.  First, the local rule addresses the discovery obligations of "parties" and the subsection cited by Wolf Haldenstein (26.1(e)) is titled "Interrogatories and Production Requests" (it does not mention subpoenas).  Thus, by its own terms the local rule does not apply to a subpoena served on a non-party, such as Wolf Haldenstein.  Second, the local rule provides that a party need not provide a privilege log for "work product material created _after_ commencement of the action." (emphasis added).  The Shanghai Likang Report was dated November 2015, which was almost a year _before_ the commencement of the class action.  As such, the Shanghai Likang Report and related materials requested in the Subpoena are not exempted under the local rule.  Consequently, Wolf Haldenstein has violated Rule 45 by refusing to provide a privilege log and its work product objections are waived.  _See In re Fontainebleau Las Vegas Contract Litig._, No. 09-02106-MD-GOLD, 2011 WL 65760, at *11 (S.D. Fla. Jan. 7, 2011) (citing The Attorney-Client Privilege and the Work Product Doctrine § 62 (Edna Selan Epstein ed., 4th ed. supp. 2004) ("[V]oluntary compliance with a subpoena without fully exhausting attempts to defeat the subpoena or to pursue privilege claims vigorously, will generally be deemed a waiver of any privilege or work-product protection.").

**III.    THE SPECIFIC DOCUMENT REQUESTS**

Because there was a subject matter waiver of the work product protection with respect to documents and information related to the Shanghai Likang Report, Wolf Haldenstein's objections should be overruled.  Nevertheless, production of the requested documents is warranted for the following additional reasons.

A.      **Subpoena Request No. 1**

Subpoena Request No. 1 seeks "[a]ll engagement letters relating to the Shanghai Likang Report."  Wolf Haldenstein objected to this request because, among other reasons, "it was not considered by any of Plaintiff's testifying experts in this case in forming their opinions, and is confidential by its (their) terms."  Courts have determined that engagement or retention letters are discoverable.  *See, e.g.*, *In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK), 2007 WL 1815461, at *1 (S.D.N.Y. June 25, 2007) (holding that the terms of an expert's engagement is "relevant to the credibility of their testimony and should be discoverable").  In *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 629 F. Supp. 2d 175, 190 (S.D. Conn. 2009), where the testimony of two experts was stricken, the court explained that "[a]n inquiry with a preordained conclusion is neither scientific nor legally reliable."  The court based its decision, in part, on an expert's engagement letter that made clear that he was retained for a limited purpose dictated by counsel and was "based on a process that was artificially narrow and confined to an incomplete set of data."  *See id.*

Similarly, Sidley seeks to determine the scope of Wolf Haldenstein's engagement of FTI, including any restrictions or limitations placed on the investigation.  This information may shed light on the report prepared by FTI, which was subsequently considered by Thompson, the testifying expert.  Any such restrictions or limitations are likely to be found in the engagement letter.[4]

---

[4] Wolf Haldenstein's claim that the engagement letter is "confidential by its terms" is not a basis for withholding it from production.  Wolf Haldenstein has not asserted that the requested engagement letter actually contains confidential information (and it seems unlikely that an engagement letter would).  *See United States v. Boulware*, 203 F. App'x 168, 170 (9th Cir. 2006) (defendant failed to identify confidential or privileged information that would be disclosed if required to produce engagement letter).  Moreover, any concerns about the public release of the engagement letter could be alleviated by requesting a protective order.

### B.    Subpoena Request No. 3

Subpoena Request No. 3 seeks "[a]ll documents that FTI collected, prepared, received, or used in connection with its engagement for the Shanghai Likang Report."  Wolf Haldenstein objected to this request "to the extent [it] . . . seeks any such documents beyond what may have been provided to FTI by Wolf Haldenstein, as Wolf Haldenstein has no knowledge of any documents "collected, prepared, received or used" by FTI beyond what Wolf Haldenstein may have provided FTI."  Wolf Haldenstein's objection is limited to documents provided to FTI.  As discussed above, those documents are not privileged and are relevant.  However, Wolf Haldenstein has failed to address documents that FTI may have collected, prepared, received or used and then provided to Wolf Haldenstein.  For example, in connection with its engagement, did FTI conduct research, prepare notes, obtain materials in China, or take photographs, and provide those materials to Wolf Haldenstein?  If so, those materials should be produced.[5]

### C.    Subpoena Request No. 4

Subpoena Request No. 4 seeks "[a]ll communications to or from FTI in connection with FTI's engagement for the Shanghai Likang Report."  Wolf Haldenstein asserted the same general objections referenced in each of its prior responses.  Because Thompson, the testifying expert, received the report prepared by FTI, there is a subject matter waiver as to all communications exchanged between Wolf Haldenstein and FTI related to the Report.  *See L-3 Commc'ns Corp.*, 2014 WL 2882925, at *3.

---

[5] In addition, the Report refers to FTI's "supplementary Ownership and Assets Chart," but no such chart was provided by Thompson, and Wolf Haldenstein has refused to produced it.  (Warren Decl. ¶ 18 and Exh. I.)  This information is responsive to Subpoena Request No. 3 and must also be produced pursuant to Rule 26(a)(2)(B).

## CONCLUSION

For the reasons stated above, Sidley respectfully requests that this Court enter an order that: (i) grants this Motion; and (ii) compels Wolf Haldenstein to produce all the records sought in the Subpoena within ten days from the Court's Order.

## GOOD FAITH CERTIFICATION

In accordance with Local Rule 37.3 and Federal Rule of Civil Procedure 37(a)(1), undersigned counsel for Sidley certifies that prior to seeking judicial resolution of this discovery dispute, he conferred in good faith by telephone with opposing counsel in an effort to resolve this dispute.

Dated: November 19, 2018

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
*Counsel for Sidley Austin LLP*
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel:  (305) 374-8500
Fax:  (305) 789-7799

By: /s/ Stephen Warren
    Stephen Warren
    New York Bar No. 4000667
    stephen.warren@hklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 19, 2018, I electronically filed the foregoing

document with the clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on counsel of record identified below via first-class mail.

Charles J. Hecht
Malcolm T. Brown
Daniel Tepper
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016

/s/Stephen Warren
Stephen Warren